IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DONNA GRINDSTAFF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 3:24-cv-00914 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| WILSON COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **<u>MEMORANDUM OPINION</u>**

Pending before the Court[1] is the report and recommendation (Doc. No. 24, "R&R") of the

Magistrate Judge, which recommends that the Court grant the motion to dismiss (Doc. No. 7,

"Motion") filed by Defendants, Wilson County, Robert Bryan, Mike Hale, and Joseph Riley Pierce

(collectively, "Defendants"). Plaintiff has filed Objections (Doc. No. 26, "Objections")[2] to the

R&R and a memorandum in support of her Objections (Doc. No. 27, "Memorandum in Support

of Plaintiff's Objections"). Although the exclusive proper action for a party who disagrees with a

report and recommendation is to file *objections*, and not additionally a separate memorandum in

support of the objections, given Plaintiff's *pro se* status the Court has considered the Memorandum

in Support of Plaintiff's Objections as if it is part of the Objections themselves.[3] Defendants filed

---

[1] Herein, "the Court" refers to the undersigned District Judge, as opposed to the Magistrate Judge who authored the R&R.

[2] Herein, a given use of the term "Objections" may refer to the document (Doc. No. 26) itself, to the purported objections contained therein (i.e., the "objections" to the R&R contained within the "Objections"), or both.

[3] The Court notes that in the Memorandum in Support of Plaintiff's Objections, Plaintiff appears to simply recite the facts as she sees them, restate law she claims is relevant, and reiterate the same arguments made in the Objections. Therefore, although the Court has considered the Memorandum in Support of Plaintiff's

a response to Plaintiff's objections to the Magistrate Judge's R&R (Doc. No. 29, "Response") and a memorandum in support of their Response (Doc. No. 30). For the reasons stated herein, the Court will adopt the R&R with the caveat that the Court declined to address the matter of issue preclusion.

Below, the Court first will review the relevant factual and procedural background. The Court next will provide an examination of the substance of the R&R before then reviewing the legal standard for a district court judge's review of the report and recommendation of a magistrate judge. The Court will then analyze Plaintiff's Objections to the R&R and review (as necessary) any portions of the Magistrate Judge's R&R to which Plaintiff made a proper objection.

BACKGROUND

Plaintiff filed a complaint in the United States District Court for the Middle District of Tennessee, initiating the action captioned *Donna Dickinson v. Wilson County, Tennessee, and Joseph Pierce, in his individual capacity*, and bearing case number 3:22-cv-00553 (the "Earlier Action"). (*Dickinson*, Doc. No. 1).[4] In the Earlier Action, Plaintiff asserted claims against Wilson County, Tennessee and Joseph Pierce ("Original Defendants") under 42 U.S.C. § 1983, which arose out of her arrest by Defendant Pierce and her subsequent transport and detention on July 24, 2021. (*Id.* at pp. 2-6). Plaintiff asserted, among other things,[5] unlawful seizure and excessive force in violation of the Fourth Amendment, cruel and unusual punishment in violation of the Eighth

---

Objections, that document does not advance Plaintiff's position any more than do her (ultimately ineffective) Objections.

[4] Herein, when the Court cites docket entries in the instant action, it cites them as "(Doc. No. ——)." When the Court cites docket entries in *Donna Dickinson v. Wilson County, Tennessee, and Joseph Pierce, in his individual capacity*, No. 3:22-cv-00553 (i.e., the Earlier Action) it will cite to them as "(*Dickinson*, Doc. No. ——)."

[5] In the Earlier Action, Plaintiff brought additional claims, but those claims are not relevant to the disposition of the Motion.

Amendment, and failure to render medical aid. (*Id.* at pp. 3 and 6). In support of her aforementioned claims, Plaintiff alleged, among other things, that probable cause was lacking for her arrest, (*id.* at ¶ 3), and that she was harmed during the transport to the jail because Defendant Pierce "chose not to render aid to the Plaintiff" (*id.* at ¶¶ 6-7). The Earlier Action was dismissed with prejudice (*Dickinson*, Doc. No. 163) after this Court adopted the Magistrate Judge's report and recommendation (Doc. No. 156), which recommended that the Court grant Defendant Wilson County's and Joseph Pierce's motion for summary judgment.

On July 24, 2024, Plaintiff filed the Complaint in the above-captioned action (the "Present Action"), and therein she (again) asserted claims under 42 U.S.C. § 1983 based on the alleged unlawful seizure, cruel and unusual punishment, and failure to render medical aid. (Doc. No. 1 at 8). Notably, this time, when asserting her claim of failure to render medical aid, Plaintiff specifically referred to herself becoming unconscious in the rear seat of the police car. (*Id.* at p. 9). Plaintiff alleged that "[t]he Defendants acted with intent to withhold evidence from Plaintiff in the first lawsuit filed causing the Plaintiff to file a second lawsuit upon discovery of her being unconscious in the rear seat of the patrol car." (*Id.* at ¶ 25). In the Present Action, in addition to again suing the Original Defendants, Plaintiff also added claims against Defendant Robert Bryan and Defendant Mike Hale ("New Defendants") based on inadequate training (Doc. No. 1 at ¶ 9) and "fail[ing] to fire and jail Defendant Pierce for his improper seizures, failure to investigate, conspiring to falsely arrest/imprison/extort Plaintiff, failure to arrest the aggressor Todd Dickinson, excessive force with handcuffs, and failure to render medical [sic] aide" (*id.* at ¶ 16).

The Earlier Action and the Present Action both center on events that took place on July 24, 2021. The Court agrees with the Magistrate Judge's assertion in the R&R that the "recitation of the facts regarding the incident at issue found in the Court's decision granting the motion for

summary judgment in the [Earlier Action is] helpful to understanding the allegations set forth in

this matter." (Doc. No. 24 at 2). The Court includes this recitation of facts here for reference:

> Plaintiff alleges that on July 24, 2021, she was being harassed by her husband, Todd Dickinson ("T.D."), in their home in Mount Juliet, Tennessee, because she would not "sign off on their marital property." *Id.* at 2. Plaintiff asserts that she was seeking a divorce from T.D. because she believed that he was committing fraud regarding the refinancing and the anticipated sale of their residence and that T.D. was threatening and intimidating her by throwing a paper in her face, withholding the family automobile, destroying property, entering her personal space, and repeatedly disrupting a telephone call she was having with her parents. *Id.* At some point, T.D. contacted the Sheriff's Department and Deputy Pierce was dispatched to the residence. *Id.*
>
> Plaintiff asserts that she was asleep in an upstairs bedroom when she was awakened by Pierce and, without any explanation or questioning, she was told that she was under arrest. *Id.* She asserts that there was not a warrant for her arrest and that Pierce did not "inquire about any relevant facts" and did not "investigate or seek justice on behalf of the Plaintiff who is the victim of domestic violence both physical and financial." *Id.* at 2-3. She asserts that she was placed under arrest while wearing "a skimpy nightgown," and that Pierce ignored her request that a female officer be present. *Id.* at 3. She alleges that she was handcuffed behind her back in a very tight manner and that Pierce refused to loosen the handcuffs despite her repeated complaints about the handcuffs being too tight, resulting in "swelling and bruising to her wrists and other parts of her body." *Id.* She also alleges that she requested her purse after being placed in the back of the patrol car and that Pierce went to retrieve the purse but did not bring it back with him. *Id.* Plaintiff alleges that Pierce drove "fast around corners" and took his hands off the steering wheel to put chewing tobacco in his mouth. *Id.* She asserts that Pierce's conduct caused her "to fall and bruise her shoulder and other extremities," caused her to suffer emotional stress, and caused her to become so scared that she hyperventilated, but that Pierce did not offer her any assistance, aid, or medical care. *Id.* Plaintiff was transported to the county jail by Pierce, where she was held for twelve hours before being released. *Id.* She does not allege that she had any further interactions with Pierce once she was detained at the jail.
>
> Plaintiff alleges that she was told after booking that she "was suicidal," that she could not make an immediate telephone call, and that she would be "bound" if she asked again for a telephone call. *Id.* at 4. She asserts that she had to wait six hours to be examined by a nurse before she was permitted to make a telephone call to her parents. *Id.* She asserts that she was denied a blanket or a shirt despite being clothed in only a nightgown, that the cell in which she was detained was dirty and cold, and that she was confined with five other women without any face masks to protect her from COVID. *Id.* at 4-5. Plaintiff alleges that she was eventually released from the jail onto the street, still in her nightgown, where she was pursued by a man who tried to coax her into his residence. *Id.* at 4.

Plaintiff alleges that she contracted "COVID pneumonia and a pulmonary embolism" two weeks after her detention, which she attributes to the conditions in her jail cell. *Id.* at 4-5. She also alleges that T.D. continued to harass and threaten her after her release and "conveyed through third parties" that he would drop the charge if she "signed off on marital property." *Id.* at 4. Plaintiff further alleges that she attempted to report T.D.'s criminal activities to the "Wilson County authorities" but they were not interested in investigating or prosecuting Dickinson. *Id.* She also asserts that, despite providing evidence to the district attorney that the accusation against her was false, she was required to travel from Alabama to Lebanon, Tennessee for a hearing before the General Sessions Court where the charge was dismissed and expunged. *Id.*

Plaintiff alleges that, because of these events, she suffered financial harm in the costs of a criminal defense attorney, the loss of a $1,400 check that was in her purse, and the loss of $4,000 in cash and personal belongings that were in her marital residence and that she could not retrieve after her arrest. *Id.* at 5-6. She further contends that she suffered pain and humiliation and damage to her good name and reputation. *Id.*

(Doc. No. 24 at 2-4 (quoting *Dickinson*, Docket No. 156, at 2-4) (italicization added to "id.")).

Defendants filed a motion to dismiss (i.e., the Motion) pursuant to both Rule 12(b)(6) and Rule 42. (Doc. No. 7 at 1). In support of their Motion, Defendants also filed a memorandum (Doc. No. 8, "MTD Memorandum"). In its MTD Memorandum, Defendants asserted that "[t]he statute of limitations bars each of Plaintiff's claims." (Doc. No. 8 at 4). Alternatively, Defendants asked the Court to consolidate the Present Action with the Earlier Action under Rule 42. (*Id.* at 7). Plaintiff filed a response in opposition to Defendants' Motion (Doc. No. 9, "MTD Response") and a memorandum of law in opposition to the Motion (Doc. No. 10, "MTD Response Memorandum"). In the MTD Response and MTD Response Memorandum, Plaintiff asserts that her claims are not untimely based on the Sixth Circuit's rules governing when the limitations period begins to run (i.e., the discovery rule) and the assertion that Defendants fraudulently concealed rear-seat video evidence showing that she was unconscious in the back of Defendant Pierce's cop car ("Video"). (Doc. No. 9 at 3, 6, and 24; Doc. No. 10 at 1-2). Notably, in the MTD Response, Plaintiff asserted that she "rightfully filed the second lawsuit within the statute of

limitations of one-year upon late discovery." (Doc. No. 9 at 24). Thereafter, the Magistrate Judge issued the R&R.

THE MAGISTRATE JUDGE'S R&R

The R&R recommended dismissal of the Present Action. First the R&R discussed why the claims against the Original Defendants (i.e., Defendants Wilson County and Joseph Pierce) should be dismissed. (Doc. No. 24 at 8-10). With respect to the Original Defendants, the Magistrate Judge recommended dismissal on two grounds: (1) claim preclusion and issue preclusion,[6] and (2) limitations.[7] (*Id.*).

---

[6] In the R&R the Magistrate Judge referred to "claim preclusion" and "issue preclusion" as "res judicata" and "collateral estoppel" respectively. Courts and commentators often do likewise, treating the term "res judicata" as encompassing only "claim preclusion" and the term "collateral estoppel" as encompassing only "issue preclusion." On the other hand, the Sixth Circuit has stated that "[t]he term 'res judicata' encompasses two distinct doctrines regarding the preclusive effect of prior litigation . . . . One is claim preclusion (also known as res judicata), and the other is issue preclusion (also known as collateral estoppel). *Outdoor One Commc'ns LLC v. Charter Twp. of Canton*, 155 F.4th 776, 781 (6th Cir. 2025) (internal citations and quotations omitted). For clarity, the Court elects to utilize the terminology of "claim preclusion" and "issue preclusion" when referring to what the Magistrate Judge referred to respectively as "res judicata" and "collateral estoppel."

Further, although the Court appreciates that claim preclusion and issue preclusion are distinct principles, the Court refers to the two together as a single ground for dismissal because the Magistrate Judge declined to provide a separate analysis as to each. Instead, the R&R simply states that the "undersigned believes that the principles of [claim preclusion] and [issue preclusion] apply to this case given the Court's ruling on the Defendants' motion for summary judgment in the underlying case." (Doc. No. 24 at 9). Therefore, the Court elects to refer to the Magistrate Judge's recommendation for dismissal premised on claim preclusion and issue preclusion as a single ground for dismissal. The Court will conduct its analysis accordingly.

[7] The undersigned will highlight a few important points regarding the terminology used herein, by reference to something he wrote years ago:

> On the subject of limitations, courts often use language loosely, interchanging various terms for one another. For maximum clarity, terms must be defined so that important concepts are distinguishable from one another, then used consistently in accordance with those definitions. Herein, legal authorities will be paraphrased in terms of the following definitions to convey the concepts expressed therein, regardless of the terms used (or misused) by the authority being cited.

> As used herein, a "statute of limitations" refers to a legislative enactment, or codification thereof, that sets forth a limitations period.... A "limitations period" refers to the length of time-the specific number of days, months, or years-in which a given claim can be commenced, as set forth in a statute of limitations. "Limitations" [refers] to the legal

First, the Magistrate Judge *sua sponte*[8] raised the issues of claim preclusion and issue preclusion. (*Id.* at 8-9). Notably, the Magistrate Judge found that in the Present Action, Plaintiff asserts "the same allegations from the [E]arlier [A]ction . . . adding additional claims against Robert Bryan and Mike Hale for inadequate training[.]" (*Id.* at 1). In relevant part, the R&R states the following:

> The undersigned believes that the principles of [claim preclusion] and [issue preclusion] apply to this case given the Court's ruling on the Defendants' motion for summary judgment in the [Earlier Action]. While not addressed by the Parties, to the extent that the claims Plaintiff asserts in this action are virtually identical to the claims asserted and found to be lacking in the [Earlier Action], there is no escaping the principles of [claim preclusion] and [issue preclusion].

(*Id.* at 9).

Second, the Magistrate Judge alternatively recommends dismissal based on his view that the applicable limitations period had run. (*Id.* at 9-10). The Magistrate Judge considered Plaintiff's argument that she "either did not receive or was otherwise [un]able to access the video evidence until December 2023," but the Magistrate Judge found that such alleged late discovery did not serve to reset the start of the running of the limitations period, stating the following:

> The problem with the Plaintiff's argument is that the allegations in this action do not create a new cause of action unknown to her at the time the original action was brought. Instead, there are additional facts learned on the course of discovery that support the claim previously made in the litigation. Therefore, they are subject to

---

doctrine whereby a plaintiff is barred from bringing a claim based upon the lapse of the applicable limitations period.

Eli J. Richardson, *Eliminating the Limitations of Limitations Law*, 29 ARIZ. ST. L.J. 1015, 1017-19 (1997). Herein, when using his own words, the undersigned intends to stick generally to this terminology, with the caveat that the R&R, and the case law and briefing of the parties he cites or quotes, may not do so and thus may be less precise or looser in their terminology.

[8] "Courts are 'empowered to raise res judicata sua sponte . . . in the interests of, *inter alia*, the promotion of judicial economy.'" *Stinson v. Fowlkes*, No. 2:24-cv-02870-MSN-atc, 2025 U.S. Dist. LEXIS 179356, at *8 (W.D. Tenn. Aug. 14, 2025) (quoting *Holloway Const. Co. v. U.S. Dep't of Labor*, 891 F.2d 1211, 1212 (6th Cir. 1989) (citations omitted)).

the statute of limitations based upon the date of the events occurring which was July 24, 2021.

(*Id.* at 9). In sum, the Magistrate Judge recommended dismissal as to the claims against the Original Defendants both because claim preclusion and issue preclusion bar any such claims and because the limitations period prescribed by the applicable statute of limitations had run prior to Plaintiff filing the Present Action.

With respect to the New Defendants (i.e., Defendant Robert Bryan and Defendant Mike Hale), the Magistrate Judge recommended dismissal finding "any such claims are barred by the statute of limitation[s]." (*Id.* at 10). Notably, the Magistrate Judge explained that "the Plaintiff makes no argument why her claims against Hale or Bryant should survive[,] and the Court is unable to find one." (*Id.*). Ultimately, the Magistrate Judge found that the limitations period had expired (prior to the filing of the Present Action) with respect to the claims made against the New Defendants, explaining that "Plaintiff was well aware of any failure to train claims at the time she filed her original lawsuit. In fact, she asserted claims for failure to train and supervise in her original lawsuit." (*Id.*).

LEGAL STANDARD FOR THE REVIEW OF REPORTS & RECOMMENDATIONS

When a magistrate judge issues a report and recommendation regarding a dispositive pretrial matter, the district court judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which a *proper* objection is made. Fed. R. Civ. P. 72(b)(3); 28 U.S.C.A. § 636(b)(1).[9] The district judge may accept, reject, or modify

---

[9] Significantly, and perhaps surprisingly, the statute does not actually direct the district judge to expressly rule on the objections themselves (i.e., expressly sustain or reject the objector's *specific* criticism(s) of what the magistrate judge did). Instead of requiring the district judge to determine *the* validity of the objections to what the magistrate judge did, the statute requires the district judge to make a determination—*de novo*, which inherently means ultimately without reference to whether what the magistrate judge did was objectionable—of the portion(s) of the report and recommendation to which objection was made. Moreover, since the review of the objected-to portions of the report and recommendation is *de novo*, any critiquing of

the recommended disposition, review further evidence, or return the matter to the magistrate judge with instructions. *Id.*

A district judge is not required to review, under a *de novo* or any other standard, those aspects of a report and recommendation to which no proper objection is made. *Ashraf v. Adventist Health Sys./Sunbelt, Inc.*, 322 F. Supp. 3d 879, 881 (W.D. Tenn. 2018); *Benson v. Walden Sec.*, No. 3:18-CV-0010, 2018 WL 6322332, at *3 (M.D. Tenn. Dec. 4, 2018) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985)).

"Only 'specific written objections' to the magistrate judge's proposed factual findings and legal conclusions are 'proper' under Federal Rule of Civil Procedure 72(b)." *Frias v. Frias*, No. 2:18-CV-00076, 2019 WL 549506, at *2 (M.D. Tenn. Feb. 12, 2019). Furthermore, Local Rule

---

what the magistrate judge did ultimately would be dicta (albeit relevant and probative dicta to the extent that such critiquing explains the analysis underlying the district judge's determination of the objected-to portions of the R&R). Additionally, district judges in this Circuit not infrequently either decline to rule (or, to the same effect, deny as moot) particular objections on the specific ground that so doing is unnecessary to rule on the objected-to portion of the report and recommendation. *E.g., Collins v. Bright*, No. 2:13-CV-02987-JPM-CGC, 2021 WL 5205622, at *3 (W.D. Tenn. Nov. 9, 2021) ("[T]his objection does not affect or alter the conclusions of the Magistrate Judge and is overruled as moot."); *Lashuay v. Fornwalt*, No. 1:15-CV-1109, 2017 WL 4160947, at *1 (W.D. Mich. Sept. 20, 2017) ("This Court need not resolve all of the objections," because only some of them needed to be addressed in order to resolve the motion that was the subject of the report and recommendation); *Weatherspoon v. Williams*, No. 2:14-CV-108, 2016 WL 6070994, at *1 (W.D. Mich. Oct. 17, 2016) ("Plaintiff's objections are irrelevant and will be denied."); *Bowers v. Burnett*, No. 1:08-CV-469, 2011 WL 1047343, at *2 n.1 (W.D. Mich. Mar. 18, 2011) (noting that the Court need not resolve an objection to the extent that the objector's position on the R&R has other fatal deficiencies); *Powell v. Alcoa High Sch.*, No. 3:10-CV-212, 2010 WL 2598260, at *2 (E.D. Tenn. June 24, 2010) ("[B]ecause this objection is irrelevant to [the magistrate judge's] recommendations, it is hereby overruled.") *Cline v. Kelly*, No. 09CV859, 2010 WL 1006529, at *9 n.1 (N.D. Ohio Mar. 16, 2010) ("The Court acknowledges [the petitioner's] objection, but need not resolve it because that specific fact is not relevant to the resolution of any of the grounds for relief set forth in [the] Petition" that the magistrate judge had recommended be denied.).

  Thus, although it seems clear that the district judge *can* expressly rule on the objections, the Court concludes that a district judge is not required to do so. And herein, the Court declines to do so, focusing instead on the required *de novo* review and determination of the objected-to parts of the R&R—albeit in part by taking account of any ways in which the objections shed light on what the Court's ultimate determination should be.

72.02(a) provides that such objections must be written and must state with particularity the specific portions of a magistrate judge's report or proposed findings or recommendations to which an objection is made. L.R. 72.02(a); *see also See* Fed. R. Civ. P. 72(b)(2). Significantly, "[t]he filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object. Moreover, an objection that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an objection as that term is used in this context." *Frias*, 2019 WL 549506, at *2 (internal citations and quotations omitted). In other words, "the district court need not provide *de novo* review," or any other type of review, "where the objections are 'frivolous, conclusive or general,'" and therefore improperly made. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (per curiam) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982)). *See also Ashraf*, 322 F. Supp. 3d at 881 ("The district court is not required to review—under a *de novo* or any other standard—those aspects of the report and recommendation to which no objection is made." (citation omitted)); *Benson*, 2018 WL 6322332, at *3 (same).

ANALYSIS OF PLAINTIFF'S OBJECTIONS AND REVIEW OF THE R&R

Here, Plaintiff has filed Objections to the R&R. Plaintiff herself has organized her objections into the following six categories: (1) "Objection 1: Magistrate erred in factual asis [sic] when not concluding the Failure to Render Aid while unconscious was ot [sic] litigated," (Doc. No. 26 at 5, "Objection 1"); (2) "Objection 2: Magistrate errs when he does not apply law when he stated the 'Complaint assert[ed] the same allegations from the earlier action,'" (*id.* at 10, "Objection 2"); (3) "Objection 3: Omissions of Relevant Facts by the Magistrate is an error in law when applying *Twombly*," (*id.* at 11, "Objection 3"); (4) "Objection 4: the magistrate errs in law when applying the statute of limitation on a Complaint that had fraudulently withheld video

evidence hiding a failure to render aid to Plaintiff who was unconscious with no knowledge of the event," (*id.* at 14, "Objection 4"); (5) "Objection 5: The magistrate errs in both fact and law when applying *[claim preclusion] and [issue preclusion]*. The magistrate argues using cases involved in Judicial Estoppel: *Richardson v. Tenn. Bd. Of Dentistry and Edwards v. Aetna Life Ins. Co.*, to Argue [issue preclusion] applies in this case," (*id.* at 17, "Objection 5"); and (6) "Objection 6: The Magistrate Does Not Rule on the Claims in Plaintiffs Complaint, so All the Claims Should Proceed and the Motion to Dismiss Should be Denied," (*id.* at 24, "Objection 6").

Notably, a review of Plaintiff's Objections reveals that none of them relate to the portion of the R&R wherein the Magistrate Judge recommends dismissal of the claims against the New Defendants.[10] Accordingly, the Court is not required to review, under a *de novo* or any other standard, that portion of the R&R. Therefore, the Court will adopt and approve the portion of the R&R recommending dismissal of the claims against the New Defendants.

Plaintiff's six objections all appear to relate to the portion of the R&R wherein the Magistrate Judge recommends dismissal of the claims made against the Original Defendants. The six objections can be grouped into three categories, the third of which comprises just a single

---

[10] In the R&R, the Magistrate Judge recommended dismissal of the failure to train claims that were asserted against the New Defendants. The Magistrate Judge stated that the claims against the New Defendants were barred by limitations because "Plaintiff was well aware of any failure to train claims at the time she filed her original lawsuit. In facts, she asserted claims for failure to train and supervise in her original lawsuit." (Doc. No. 24 at 10). Although Plaintiff filed an objection related to the Magistrate Judge's limitations analysis (i.e., Objection 4), Plaintiff's objection challenged the Magistrate Judge's limitations analysis only as it was applied to the claims against Old Defendants and not as it was applied to the claims against the New Defendants. For example, in Objection 4, Plaintiff focuses on asserting why the limitations had not expired as to her failure-to-render-aid claim, which was asserted only against the Original Defendants and not against the New Defendants. (Doc. No. 26 at 14-17). In Objection 4, Plaintiff relies almost exclusively on the argument that Defendants fraudulently concealed the Video. (*Id.*). The Court agrees with the Magistrate Judge's statement that "Plaintiff's sole argument regarding her access to the [Video] has no impact on any claims against the[] [New] Defendants[,] and the Plaintiff makes no argument as to why it would." (Doc. No. 24 at 10).
  Therefore, Plaintiff failed to specifically object to the Magistrate Judge's recommendation that the statute of limitations barred the claims made against the New Defendants.

objection. The first category ("First Category") comprises Objection 3 and Objection 6—those objections that are not proper objections. The second category ("Second Category") comprises Objection 1, Objection 2, and Objection 5—the objections related to the Magistrate Judge's claim-preclusion and issue-preclusion analysis. The third category ("Third Category") is a single-objection category comprised solely of Objection 4—the objection related to the Magistrate Judge's limitations analysis. The Court will conduct its analysis by category.

With respect to the First Category, the Court concludes that both Objection 3 and Objection 6 are improper objections. As indicated above, the Court is required to review only portions of the R&R that were "properly objected to." Fed. R. Civ. P. 72(b)(3). As discussed above, "[o]nly 'specific written objections' to the magistrate judge's proposed factual findings and legal conclusions are 'proper' under Federal Rule of Civil Procedure 72(b)." *Frias*, 2019 WL 549506, at *2. Objection 3 and Objection 6 are improper because they do not object to the Magistrate Judge's factual findings or legal conclusions, but instead provide support for why (according to Plaintiff) her claims are meritorious. Objection 3 asserts that dismissal is improper because (according to Plaintiff) Plaintiff plausibly pled sufficient factual matter to support her claim (Doc. No. 26 at 11-14) and Objection 6 generally asserts that the Magistrate Judge did not "[r]ule on the [c]laims in Plaintiff[']s complaint" (*id.* at 24). Notably, when recommending dismissal, the Magistrate Judge did not (and did not need to) assess the substantive merit of Plaintiff's claims, but instead recommended dismissal based on (important) procedural deficiencies, namely that Plaintiff's claims against the Original Defendants are barred by claim preclusion and issue preclusion and by limitations. Therefore, Objection 3 and Objection 6 are improper.

The Court turns next to the Second Category of objections (Objection 1, Objection 2, and Objection 5), which relates to the Magistrate Judge's recommendation that the Motion should be

granted based on claim preclusion and issue preclusion. As discussed below, the Court finds that claim preclusion independently supplies grounds for dismissal, and it therefore declines to address whether issue preclusion would also support dismissal.

Under a generous construction of the objections in the Second Category, the Court discerns that Plaintiff is objecting to the Magistrate Judge's recommendation of dismissal on the asserted grounds that (1) the Magistrate Judge improperly concluded that Plaintiff's failure-to-render-medical-aid claim that was brought against the Original Defendants in the Earlier Action is the same claim as the failure-to-render-medical-aid claim brought against the Original Defendants in the Present Action (Doc. No. 26 at 8, 10, and 23);[11] and (2) when recommending dismissal the Magistrate Judge improperly failed to consider that (according to Plaintiff) Defendants fraudulently concealed the Video, making preclusion improper (*id.* at 9 and 22).[12] Because they

---

[11] The R&R concludes that the principles of claim preclusion provide grounds for dismissal as to all the claims made against the Original Defendants in the Present Action (i.e., unlawful seizure, cruel and unusual punishment, and failure to render medical aid. (Doc. No. 1 at 8)) because the claims asserted against the Original Defendants in the Present Action are "virtually identical" to the claims asserted in the Earlier Action. (Doc. No. 24 at 9). Because Plaintiff appears to object to this recommendation only as it relates to her claim for failure to render medical aid, the Court need not and will not conduct a review (*de novo* or otherwise) of the R&R's recommendation of dismissal of the other claims based on claim preclusion.

[12] District courts frequently face objections to reports and recommendations of magistrate judges that are difficult to understand or to parse. When this happens, district courts have overruled objections that they characterize as "incoherent," or "nonsensical," and have found that such objections do not require a *de novo* review of a magistrate judge's recommendation. *See e.g., Gossett v. Speer*, No. 3:24-CV-06039-BJR, 2025 WL 754317, at *1 (W.D. Wash. Mar. 10, 2025) (noting that petitioner's "nonsensical, inapplicable, unsupported, and/or frivolous objections, [do not] trigger the *de novo* review requirement."); *Meade v. Boone*, No. 1:21-CV-6, 2021 WL 5810577, at *1 (W.D. Mich. Dec. 7, 2021) (finding that nonsensical statements did not constitute "specific objections that warrant de novo review."); *United States v. Hakim*, No. 1:18-CR-00126, 2018 WL 4791085, at *3 (N.D. Ga. Oct. 4, 2018) (noting that a party's objections to an R&R were "were largely incoherent" and thus not warranting *de novo* review). The approach of these district courts makes sense because, after all, it is difficult to conceive of incoherent or otherwise nonsensical statements constituting a "specific written objection" within the meaning of Fed. R. Civ. P. 72(b). Indeed, as the Sixth Circuit has noted, for an objection to be proper, "[t]he objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). Thus, a district judge is also not required to review, under a *de novo* or any other standard, those aspects of a report and recommendation to which an incoherent or nonsensical objection is made. *See e.g., Gossett*, 2025 WL 754317, at *1; *Meade*, 2021 WL 5810577, at *1.

are specific, written, and proper objections warranting *de novo* review, the Court will conduct a *de novo* review of those portions of the R&R that these objections challenge.

The Court first addresses whether the failure-to-render-medical-aid claim that was brought against the Original Defendants in the Earlier Action is the "same claim" as the failure-to-render-medical-aid claim brought against the Original Defendants in the Present Action, and it answers that question in the affirmative. The answer to this question is important because in order for claim preclusion to apply, one requirement is that "there must . . . be an 'identity of the causes of action.'" *Heike v. Cent. Mich. Univ. Bd. of Trs.*, 573 F. App'x. 476, 482-483 (6th Cir. 2014) (quoting *Westwood Chem. Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981)). "Causes of action share an identity where the facts and events creating the right of action and the evidence necessary to sustain each claim are the same." *Id.* at 483 (citing *Sanders Confectionary Prods. v. Heller Fin., Inc.*, 973 F.2d 474, 484 (6th Cir. 1992). Importantly, "[t]wo suits are for or [are] in respect to the same claim . . . if they are based on substantially the same operative facts[.]" *Id.* (quoting *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 317 (2011)).[13]

In the present case, the Court finds that the failure-to-render-medical-aid claim that was asserted in the Earlier Action and the failure-to-render-medical-aid claim asserted in the Present Action are the "same" claim. Of consequence, the Court finds that both claims are not only "based on *substantially* the same operative facts," *Heike*, 573 F. App'x 483 (emphasis added) (internal

---

Plaintiff's Objections and Memorandum in Support of Plaintiff's Objections are challenging to discern with precision. If Plaintiff was attempting to object on grounds apart from those laid out by the Court, the Court finds that any such attempt was incoherent or nonsensical and thus did not implicate anything in the R&R that the Court was not required to review, under a *de novo* or any other standard.

[13] The undersigned noted long ago that in the context of issue preclusion in particular, courts tend to use the terms "same," "identical" and "[sharing an] identity . . . ." Eli J. Richardson, *Taking Issue with Issue Preclusion: Reinventing Collateral Estoppel,* 65 MISS. L.J. 41, 69 (1995). The same is true in the similar context of claim preclusion, as is made clear in the discussion to which this footnote is appended.

citations and quotations omitted), but also are based on *precisely* the same set of operative facts—namely, the facts concerning the manner in which Defendant Pierce transported Plaintiff to jail on July 24, 2021, and his failure to render medical aid to Plaintiff during such transit.

True, in asserting her failure-to-render-medical-aid claim in the Present Action, Plaintiff makes the additional factual allegation that she became unconscious in the back of the police car. But a plaintiff "cannot overcome the bar posed by [claim preclusion] merely by rebranding his legal theory or by providing additional evidence for his unsuccessful . . . . claims." *Perkins v. Trek Bicycle Corp.*, No. 25-1145, 2025 WL 4293608, at *2 (6th Cir. Sept. 3, 2025) (citing *Sewell v. Clean Cut Mgmt., Inc.*, 621 N.W.2d 222, 225 (Mich. 2001) (per curiam)). *Accord Samatar v. Clarridge*, No. 2:04-CV-1108, 2006 WL 355684, at *14 (S.D. Ohio Feb. 16, 2006) ("The fact that appellant now attaches additional evidence in support of his claims does not make the doctrine of [claim preclusion] inapplicable."), *report and recommendation adopted*, No. 2:04-CV-1108, 2006 WL 1027743 (S.D. Ohio Apr. 18, 2006), *aff'd*, 225 F. App'x 366 (6th Cir. 2007). Therefore, Plaintiff cannot overcome claim preclusion simply by providing additional allegations in support of a previously asserted claim. Therefore, having conducted a *de novo* review, the Court finds that the claims are the same.

The Court next addresses whether the alleged fraudulent concealment of the Video should prevent claim preclusion, and it answers that question in the negative. In the Earlier Action a Magistrate Judge in this District ("Prior Magistrate Judge") already concluded that no such fraudulent concealment took place. (*Dickinson*, Doc. No. 99 at 5-8). In the Earlier Action, Plaintiff filed a motion for discovery sanctions asserting that Defendants had fraudulently withheld and concealed the Video, seeking an order compelling discovery and imposing sanctions. (*Dickinson*, Doc. No. 63). However, the Prior Magistrate Judge found "no merit" in Plaintiff's request,

(*Dickinson*, Doc. No. 99 at 6), finding that there was no support for "Plaintiff's contentions that counsel withheld the [Video] or made false statements about the [Video]." (*Id.* at 8). Therefore, the Court finds that it need not consider Plaintiff's conclusory assertion that Defendants fraudulently concealed the Video when conducting its claim-preclusion analysis—or any other analysis—because no such concealment took place.

Alternatively, even assuming *arguendo* that the prior finding is not conclusive in the prior action[14] and that Defendants had fraudulently concealed the Video, such concealment still would not render claim preclusion improper, because such concealment did not prevent Plaintiff from asserting her claim in the Earlier Action. The Sixth Circuit has clarified that although wrongful (i.e., fraudulent) concealment can prevent application of claim preclusion, such prevention occurs only when two elements are shown: "(1) wrongful concealment of material facts that (2) *prevented plaintiffs from asserting their claims in the first action*." *Browning v. Levy*, 283 F.3d 761, 770 (6th Cir. 2002) (emphasis added) (citation omitted). *Accord Venture Glob. Eng'g, LLC v. Satyam Computer Servs., Ltd.*, 730 F.3d 580, 586 (6th Cir. 2013) (same). As discussed above, Plaintiff was able to bring her failure-to-render-medical-aid claim in the Earlier Action, meaning she was not prevented from asserting such claim due to the alleged concealment of the Video.

In sum, having conducted a *de novo* review as to whether the alleged fraudulent concealment of the Video prevents application of claim preclusion, the Court finds that it does not. Not only did the Prior Magistrate Judge already conclude that no such fraudulent concealment took place, but even assuming *arguendo* that it had, such would not prevent the application of claim preclusion.

---

[14] The Court is aware that a colorable argument can be made that the prior finding on this point is not conclusive in the Present Action under the doctrine of issue preclusion.

After conducting a *de novo* review of those portions of the R&R to which Plaintiff objected in the Second Category of objections, the Court agrees with the Magistrate Judge that claim preclusion bars the claims against the Original Defendants. Therefore, the Court will adopt and approve the portion of the R&R recommending dismissal of the claims against the Original Defendants based on claim preclusion.

The Court turns next to the final category of objections, the Third Category, which comprises solely Objection 4. The Court discerns that via Objection 4, Plaintiff is objecting to the Magistrate Judge's recommendation as to when the limitations period began to run on Plaintiff's claims against the Original Defendants.[15] The Magistrate Judge found that the applicable 1-year limitations period began to run on July 24, 2021 (Doc. No. 24 at 9). Given such a finding, the Present Action—which was filed on July 26, 2024—would be barred by limitations. But Plaintiff objected to such finding, asserting that the limitations period did not begin to run until December 3, 2023, (Doc. No. 26 at 17), relying on both the discovery rule and the doctrine of fraudulent concealment. (*Id.* at 14-17). Under Plaintiff's proffered time for the beginning of the running of the limitations period, the Present Action would not be barred by limitations. Thus, the Court will conduct a *de novo* review of the Magistrate Judge's analysis and conclusion as to when the limitations period began running—the portion of the R&R to which Plaintiff has lodged a specific, written, and proper objection through the Third Category of objections.

Notably, "[a]lthough state law provides the statute of limitations to be applied in a § 1983 damages action, federal law governs the question of when that limitations period begins to run." *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984) (internal citations omitted). The Sixth Circuit

---

[15] Although at first glance, Objection 4 may appear to call into question the Magistrate Judge's determination as to the length of the applicable limitations period, upon further review, the Court finds that Objection 4 solely relates to when such period began to run.

has clarified that in § 1983 actions it "adopts a 'discovery rule,'" which "postpones the [beginning of the running of the] limitations period to the date that the plaintiff discovered, or reasonably should have discovered, basic facts about the claim." *Reguli v. Russ*, 109 F.4th 874, 879 (6th Cir. 2024) (citations omitted). *Accord Coleman v. Hamilton Cnty. Bd. of Cnty. Comm'rs*, 130 F.4th 593, 602 (6th Cir. 2025) ("[A]lthough the Supreme Court has presumptively followed what has been called an 'occurrence' rule for § 1983 claims, our cases have presumptively followed a 'discovery' rule for those claims."). Sixth Circuit caselaw "leave[s] unclear what this discovery rule requires plaintiffs to have 'discovered' to trigger the limitations period." *Coleman*, 130 F.4th at 602. Many "cases suggest that the limitations period starts [running] when a 'plaintiff knows or has reason to know of the *injury* which is the basis of his action,'" while others suggest "that the limitations period does not start until a plaintiff knows or should know of 'both his *injury* and the *cause* of that injury.'" *Id.* (quoting *Reguli*, 109 F.4th at 882 (internal citations and quotations omitted)). Although the Sixth Circuit has not reconciled these two lines of authority,[16] the Sixth Circuit did clarify that "[c]ourts universally recognize that the discovery rule begins once a plaintiff learns of *an* injury from the defendant's conduct—even if the plaintiff does not discover the '*full extent* of the injury' until later." *Reguli*, 109 F.4th at 883 (quoting *Wallace v. Kato*, 549 U.S. 384, (2007) (emphasis added) (citation omitted)).

Importantly, "when we borrow a state's statute of limitations, we also borrow any relevant tolling provisions." *Heard v. Strange*, 127 F.4th 630, 633 (6th Cir. 2025). "Having borrowed [Tennessee's] statute of limitations for the § 1983 claim, [the Court] appl[ies] the state's tolling

---

[16] In both *Reguli* and *Coleman*, the Sixth Circuit specifically declined to reconcile the conflicting lines of authority. *See Coleman*, 130 F.4th at 602 (finding that the court "need not reconcile [the] conflicting caselaw to decide [the] case"); *Reguli*, 109 F.4th at 883 ("[W]e need not reconcile these views in this case.").

statute, as long as the result is not inconsistent with federal law or policy." *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 845 (6th Cir. 2015) (citations omitted). Tennessee courts have held that "the doctrine of fraudulent concealment will toll the running of a statute of limitations." *Redwing v. Cath. Bishop for the Diocese of Memphis*, 363 S.W.3d 436, 461 (Tenn. 2012) (collecting cases). Importantly, application of the fraudulent concealment doctrine only serves to toll the limitations period until "plaintiff discovers or, in the exercise of reasonable diligence, should have discovered the defendant's fraudulent concealment or *sufficient facts to put the plaintiff on actual or inquiry notice of his or her claim*." *Id.* at 463 (emphasis added) (citation omitted). Put another way, the fraudulent concealment doctrine will not toll the limitations period if the plaintiff had actual or inquiry notice of her claim.[17]

Ultimately, the Court finds that limitations bars Plaintiff's claims against the Original Defendants. As discussed above, Plaintiff filed the Earlier Action on July 22, 2022, wherein Plaintiff brought claims against the Original Defendants for—among other things—unlawful seizure of Plaintiff's person and property, cruel and unusual punishment, and failure to render medical aid. (*Dickenson*, Doc. No. 1 at pp. 3 and 6). Over two years later, Plaintiff filed the Present

---

[17] It is worth repeating here what the undersigned said years ago:

> [t]he term "tolling" is used two different ways. First, "tolling" often refers to a postponement of the date the statute begins to run, usually the accrual date. By contrast, some courts use the term "tolling" to refer to suspending the running of the limitations period after it already has begun to run. Some tolling provisions cannot be placed comfortably in either tolling category, and some tolling provisions can either postpone the starting of the clock or stop it after it begins running, depending upon the timing of the event that triggers the tolling. Nevertheless, the distinction exists and is analytically important.

Richardson, *supra* note 7, at 1039-40. The discussion to which this footnote is appended is using "tolling" in the former sense, *i.e.*, to refer to the postponement of the date on which the limitations period otherwise would begin to run.

Action asserting the same claims against the Original Defendants: unlawful seizure, cruel and unusual punishment, and failure to render medical aid. (Doc. No. 1 at 8).

Notably, under the discovery rule, the limitations period for a claim begins to run when a plaintiff has knowledge of "basic facts about the claim." *Reguli*, 109 F.4th at 879. The filing of the Earlier Action clearly indicates that Plaintiff possessed "basic facts" about the claims she filed in the Earlier Action—including her claims against the Original Defendants for unlawful seizure, cruel and unusual punishment, and failure to render medical aid. Put another way, with respect to the aforementioned claims, the latest possible date for the beginning of the running of the limitations period was the date the claims were initially filed: July 22, 2022.[18] Therefore, the Present Action, which was filed on July 26, 2024 (Doc. No. 1) is surely barred by the applicable (one-year) limitations period.

As the Sixth Circuit has emphasized, the limitations period begins to run under the discovery rule "even if the plaintiff does not discover the *full extent* of the injury until later." *Reguli*, 109 F.4th at 883 (internal citations and quotations omitted). In line with such precedent, the beginning of the running of the limitations period is not postponed (beyond July 22, 2022) by (i) the alleged fact that Plaintiff did not obtain the Video showing she was unconscious until December 3, 2023, (Doc. No. 26 at 17),  or (ii) the alleged fact that Plaintiff recently became aware that she has a "collapsed disc in her L5S1," (Doc. No. 27 at 14). This is because even before obtaining the Video and knowledge of her disc injury, Plaintiff was aware that she was injured, to some degree, by Defendants' allegedly unconstitutional conduct.

---

[18] The Court recognizes that the limitations period almost certainly began to run prior to the July 22, 2022 filing of the complaint in the Earlier Action. But because the claims against the Original Defendants would remain time-barred even using this date (which is the very latest feasible date the Court could use), the Court declines to assess whether some earlier date should be used and instead assumes *arguendo* that the date is July 22, 2022.

Further, the Court finds that the alleged fraudulent concealment of the Video does not justifying tolling the statute of limitations. Not only did the Prior Magistrate Judge already conclude that no such fraudulent concealment took place, but even assuming *arguendo* that it had, such concealment nevertheless would not warrant tolling of the limitations period beyond July 22, 2022, because Plaintiff was aware of her claims against the Original Defendants before obtaining access to Video. The Sixth Circuit has explained that the application of the fraudulent concealment doctrine serves to toll the limitations period only until "plaintiff discovers or, in the exercise of reasonable diligence, should have discovered . . . *sufficient facts to put the plaintiff on actual or inquiry notice of his or her claim*." *Redwing*, 363 S.W.3d at 463 (emphasis added) (citation omitted). As discussed above, Plaintiff was clearly aware of her claims against the Original Defendants by July 22, 2022 *at the latest* given that she first filed such claims on July 22, 2022.

Therefore, after conducting a *de novo* review of the objected-to portions of the R&R, the Court agrees with the Magistrate Judge that the claims against the Original Defendants are barred by limitations, alternatively to being barred by claim preclusion. Therefore, the Court will adopt and approve the portion of the R&R recommending dismissal of the claims against the Original Defendants based (alternatively) on the claims being barred by limitations.[19]

CONCLUSION

Accordingly, for the reasons described herein, the Court will adopt and approve the R&R (Doc. No. 24), except as to its portion recommending dismissal based on issue preclusion, as the Court declines to address the mooted question of whether dismissal should be based on issue

---

[19] Although the Court agrees that limitations bars the claims against the Original Defendants, the Court would emphasize that—unlike the Magistrate Judge—it declined to definitively answer or even analyze how early the limitations period likely began to run, finding such to be unnecessary in disposing of the Motion.

preclusion. With the caveat in the prior sentence, the Court will **GRANT** Defendants' Motion (Doc. No. 7).

An appropriate corresponding order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE